## Lumber and Millwork Co. of Philadelphia v. Bianchi et al.

*J. F. Martin*, for plaintiff; *Vincent A. Carroll*, for defendants.

ALESSANDRONI, J., July 18, 1930.—This case was submitted for the decision of the court on an agreed statement of facts. The stipulation of counsel recited that the plaintiff corporation was engaged in the lumber and millwork business in the City of Philadelphia and that John Bianchi, shortly prior to March 29, 1928, placed an order with the plaintiff for material in the sum of $271.44, stating that the purchase was for the firm of Bianchi Brothers, 13th and Reed Streets, and representing to the plaintiff that the firm consisted of himself and Joseph Bianchi. At that time John Bianchi presented a business card of Bianchi Brothers and gave credit references for the same. Plaintiff investigated the statements made and found that John and Joseph Bianchi

were registered under the Fictitious Names Act as partners, trading under the name of Bianchi Brothers, and on March 29, 1928, delivered the material to Bianchi Brothers at Quakertown, Pa. As a matter of fact, the partnership had been dissolved on Dec. 15, 1925, but no notice of any kind of the dissolution was given until July 27, 1928, when the Fictitious Names record was changed to show a withdrawal from the partnership of John Bianchi, as of Dec. 15, 1925. The materials in question were purchased and used by John Bianchi on premises owned by him and without any authority to purchase in the name of Bianchi Brothers. This transaction was the first entered into between the respective parties. Bianchi Brothers were engaged in real estate and insurance business and the materials sold were to be used in a real estate operation.

The sole question at issue is whether the defendant, Joseph Bianchi, is estopped from setting up the defense that John Bianchi, at the time the goods in question were purchased, had no authority to act for the firm of Bianchi Brothers and was not a partner. The basis upon which this contention rests is the registration of the firm name of Bianchi Brothers under the Fictitious Names Act, which, at the time of the sale, showed that John Bianchi and Joseph Bianchi were partners, trading under the name of Bianchi Brothers. This fact was relied upon by the plaintiff in extending credit. There is also the additional factor that credit references for the firm had been given and were satisfactory, although this fact is not controlling, inasmuch as it furnished no indication of the personnel of the firm.

The Fictitious Names Act of June 28, 1917, P. L. 645, as amended by the Act of June 20, 1919, P. L. 542, provides that all firms using a fictitious name must register the name of the firm and the parties trading under that name with the Secretary of the Commonwealth and the prothonotary of the county in which its business is to be transacted. The Act of 1919 provides "that any person or persons conducting or carrying on any business in this Commonwealth . . . shall upon the dissolution of any such business or upon his or their withdrawal from such business have the right to require the Secretary of the Commonwealth and the prothonotary in whose office such certificate was filed to cancel such certificate, if the business has been dissolved, or to make a notation on the margin of the book in which such certificate was entered to the effect that he or they are no longer connected with or interested in such business, if he or they have withdrawn from the business."

The Fictitious Names Act has often been construed by our appellate courts, and in Lamb v. Condon, 276 Pa. 544, the purpose of the act is stated as follows: "The purpose of this statute was to protect those who might deal with such parties. This thought is well expressed by Judge Henderson, in Engle v. Insurance Co., 75 Pa. Superior Ct. 390, when he says: 'The purpose of the statute is obvious. It was intended to protect persons giving credit in reliance on the assumed or fictitious name, and to definitely establish the identity of the individuals owning the business, for the information of those who might have dealings with the concern.' "

There is no question but that the record made in compliance with the Fictitious Names Act was made on behalf of the partnership. Under the Act of 1919, when a firm is dissolved or one partner withdraws, an amendment can be made to the record so as to protect all persons interested therein. This was not done in this case, and as a result the plaintiff, relying upon the public record, extended credit to the firm of Bianchi Brothers. The record clearly indicated that John Bianchi was a partner and the selling of lumber for real estate operations was clearly within the scope of the partnership business.

Joseph Bianchi neglected to have the record amended to show the true status of the partnership, and as a result the plaintiff was misled. The purpose of the act is to protect those extending credit to a firm conducted under a fictitious name, and we, therefore, are of the opinion that Joseph Bianchi is now estopped from denying what the record stated.

Where one of two innocent parties must suffer loss because of the act of a third, he who clothed the wrongdoer with the power to injure must bear the loss.

The defendant has contended that, inasmuch as the firm was not obligated to register under the Fictitious Names Act, as is indicated in the recent case of Merion Township School District *v.* Evans, 295 Pa. 280, 285, the effect of the registration is a nullity. Regardless of whether the defendants were required to register under the act or not, the fact remains that they elected to register their firm name under the act, and are, therefore, bound by it.

And now, to wit, July 18, 1930, judgment is entered in favor of the plaintiff against Joseph Bianchi and John Bianchi, individually and trading as Bianchi Brothers.