2021 PA Super 10

| | | |
|---|---|---|
| FANNIE MAE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER JANCZAK AND OCCUPANTS | : | |
| | : | No. 3175 EDA 2019 |
| APPEAL OF: CHRISTOPHER JANCZAK | : | |

Appeal from the Order Entered October 2, 2019
In the Court of Common Pleas of Chester County Civil Division at No(s):
No. 2019-00240-RC

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

OPINION BY LAZARUS, J.:                                 Filed: January 21, 2021

Christopher Janczak appeals from the order,[1] entered in the Court of

Common Pleas of Chester County, granting summary judgment in favor of

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Apparently in an abundance of caution, Fannie Mae sought entry of judgment on the order granting its motion for summary judgment.  Judgment was accordingly entered on the trial court docket on October 16, 2019.  However, since the order granting summary judgment disposed of the entire matter, the order itself was final and appealable.  *See* Pa.R.A.P. 341.  Therefore, Janczak's appeal is properly from the order granting summary judgment entered on October 2, 2019. Because that order was served on the parties pursuant to Pa.R.C.P. 236 on October 3, 2019, Janczak had until November 2, 2019 to file a notice of appeal.  *See* Pa.R.A.P. 903 (notice of appeal shall be filed within 30 days of entry of order from which appeal taken); Pa.R.A.P. 108 (specifying date of entry of order shall be day clerk of court mails or delivers copies of order to parties).  However, because that date fell on a Saturday, Janczak's notice of appeal, filed the following Monday, November 4, 2019, is considered timely.  *See* 1 Pa.C.S.A. § 1908 (providing that whenever last day of appeal period falls on Saturday, Sunday or legal holiday, "such day shall be omitted from the computation").

appellee Fannie Mae on its action in ejectment. Upon review, we are constrained to reverse.

The trial court set forth the relevant procedural history of this matter as follows:

This action is related to the foreclosure action commenced by PNC Bank, National Association ("PNC") against [Janczak]. In rem judgment was entered on January 19, 2016[,] pursuant to the granting of PNC's motion for summary judgment. No appeal was taken.

A writ of execution was issued on February 2, 2016. A sheriff's deed for the real property located at 790 Hopewell Road, Downingtown, Chester County, Pennsylvania ("the [P]roperty") was issued on October 4, 2018 to [Fannie Mae] as the successful bidder. [The Federal National Mortgage Association, commonly known as "Fannie Mae," is a government-sponsored private corporation established by Congress to facilitate the secondary market in residential mortgages. **See** 12 U.S.C. §§ 1716b, 1719.] Subsequent to taking ownership, [Fannie Mae] notified [Janczak] by letter that it had purchased the [P]roperty at sheriff's sale and that [Janczak] must vacate the property. [Janczak] refused to vacate the [P]roperty and [Fannie Mae] filed an ejectment action on January 8, 2019.

On February 22, 2019, [Janczak] filed preliminary objections to [Fannie Mae's] complaint[,] arguing: (1) that [Fannie Mae] failed to comply with Pa.R.C.P. [] 1054(b); (2) that the verification attached to the complaint was improper; and (3) that the complaint failed to comply with the caption requirements set forth in Pa.R.C.P. [] 1018. [Fannie Mae] filed a response on March 13, 2019. [The trial court] denied [Janczak's] preliminary objections on June 24, 2019, and [Janczak] filed an answer with new matter [to Fannie Mae's complaint] on July 12, 2019.

Each party filed a motion for summary judgment. [Fannie Mae] averred in its motion [] that the record conclusively showed that it was the record owner of the [P]roperty and that it had the right to exclusive possession. Therefore, it had met its burden to show that no material issues of fact remained open on its claim for ejectment and that the court should grant its motion for summary

judgment. [Janczak] responded and averred in his cross-motion for summary judgment that [Fannie Mae] commenced its action under its fictitious name in violation of the [Fictitious Names Act, 54 Pa.C.S.A. §§ 301-332 ("Act")] and therefore could not proceed with its ejectment claim. [The trial court] disagreed and granted [Fannie Mae's] motion for summary judgment by order dated October 2, 2019.

Trial Court Opinion, 1/2/20, at 1-3 (internal citations and unnecessary capitalization omitted).

Janczak filed a timely appeal on November 4, 2019. Both he and the trial court have complied with Pa.R.A.P. 1925. Janczak raises the following issues for our review:

> 1. Whether the court below had subject matter jurisdiction [over Fannie Mae's] lawsuit because it used its fictitious name in this ejectment action while failing to [] comply with the [Act].
>
> 2. Whether the [Act] is preempted by the Federal National Mortgage Association Charter [("FNMA Charter")], a federal law, to give it standing to sue notwithstanding the [Act].

Brief of Appellant, at 2 (unnecessary capitalization omitted).

We begin by noting that Janczak does not challenge the trial court's entry of summary judgment on the merits. He raises no claim that Fannie Mae is not the owner of the Property or that it is not entitled to immediate possession thereof. Rather, his claims challenge Fannie Mae's standing to sue under its fictitious name.[2] Janczak's claims require us to engage in statutory

---

[2] We note that Janczak appears to conflate the concepts of "standing" and "subject matter jurisdiction." In his first appellate claim, he asserts that Fannie Mae's failure to register its fictitious name deprived the trial court of subject matter jurisdiction. His second claim asks us to determine whether

interpretation concerning the Act and the FNMA Charter. Accordingly, our standard of review is *de novo* and our scope of review is plenary. ***Dooner v. DiDonato***, 971 A.2d 1187, 1193 (Pa. 2009) (question of whether federal law preempts state law claims is question of law).

The Pennsylvania Fictitious Names Act provides that "[n]o entity which has failed to register a fictitious name as required by this chapter shall be permitted to maintain any action in any tribunal of this Commonwealth until such entity shall have complied with the provisions" of the Act. 54 Pa.C.S.A. § 331(a).

> The purposes of the [] Act are: (1) to protect persons giving credit in reliance on the fictitious name; and (2) to establish definitely the identities of those owning the business for the information of those who have dealings with the entity. ***Lamb v. Condon***, [] 120 A. 546 ([Pa.] 1923); ***Ross v. McMillan***, [] 93 A.2d 874, 875 ([Pa. Super.] 1953). The statute prohibiting suit and imposing a fine is penal in nature and should not be construed to extend

---

the Act is preempted by the FNMA charter, giving Fannie Mae "standing to sue notwithstanding" the Act. In the argument portion of Janczak's brief, to the extent he specifically addresses the doctrines at all, he appears to refer to the two doctrines interchangeably. The doctrines are not, however, interchangeable. Subject matter jurisdiction concerns the court's authority to consider cases of a given nature and grant the type of relief requested. ***In re Adoption of Z.S.H.G.***, 34 A.3d 1283, 1289 (Pa. Super. 2011). Standing, or capacity to sue, relates to a party's right to make a legal claim or seek judicial enforcement. ***Id.*** Here, it cannot be disputed that the court of common pleas possesses subject matter jurisdiction over actions in ejectment. Janczak's claims relate to Fannie Mae's right to make a legal claim using its fictitious name and, thus, raise a challenge to standing. Janczak properly preserved his standing claim by raising it in his answer and new matter. ***See Drake Mfg. Co., Inc. v. Polyflow, Inc.***, 109 A.3d 250, 257 (Pa. Super. 2015) (objection to standing properly preserved when raised in preliminary objections or answer to complaint).

beyond the purposes for which it was evidently enacted. ***Lamb***, 120 A. at 546; ***Ross***, 93 A.2d at 875.

***George Stash & Sons v. New Holland Credit Co., LLC***, 905 A.2d 541, 543

(Pa. Super. 2006).

Section 1723a(a) of the FNMA Charter provides as follows:

Each of the bodies corporate named in section 1717(a)(2) of this title[3] shall have power to adopt, alter, and use a corporate seal, which shall be judicially noticed; to enter into and perform contracts, leases, cooperative agreements, or other transactions, on such terms as it may deem appropriate, with any agency or instrumentality of the United States, or with any State, Territory, or possession, or the Commonwealth of Puerto Rico, or with any political subdivision thereof, or with any person, firm, association, or corporation; to execute, in accordance with its bylaws, all instruments necessary or appropriate in the exercise of any of its powers; *in its corporate name, to sue and to be sued, and to complain and to defend, in any court of competent jurisdiction, State or Federal, but no attachment, injunction, or other similar process, mesne or final, shall be issued against the property of the Association or against the Association with respect to its property*; **to conduct its business without regard to any qualification or similar statute in any State of the United States, including the District of Columbia, the Commonwealth of Puerto Rico, and the Territories and possessions of the United States; to lease, purchase, or acquire any property, real, personal, or mixed, or any interest therein, to hold, rent, maintain, modernize, renovate, improve, use, and operate such property, and to sell, for cash or credit, lease, or otherwise dispose of the same, at such time and in such manner as and to the extent that it may deem necessary or appropriate**; to prescribe,

---

[3] In 1968, Congress enacted the Housing and Urban Development Act of 1968, which divided the Federal National Mortgage Association into two separate entities, the Government National Mortgage Association (Ginnie Mae) and the Federal National Mortgage Association (Fannie Mae). ***See*** 12 U.S.C. § 1717(a)(2). As a result of the legislation, Fannie Mae "continued to operate the secondary market operations", while Ginnie Mae took over "the special assistance functions and management and liquidating functions." ***Lightfoot v. Cendant Mortgage Corp.***, 137 S.Ct. 553, 557 (2017) (brackets omitted).

repeal, and amend or modify, rules, regulations, or requirements governing the manner in which its general business may be conducted; to accept gifts or donations of services, or of property, real, personal, or mixed, tangible, or intangible, in aid of any of its purposes; and to do all things as are necessary or incidental to the proper management of its affairs and the proper conduct of its business.

12 U.S.C.A. § 1723a(a) (emphases added).

Janczak argues that Fannie Mae "had no right to file a lawsuit in the name of 'Fannie Mae' without complying with the [Act, as the Act] provides that an entity which has failed to re[gister] its fictitious name shall not be permitted to maintain any action" in the courts of this Commonwealth. Brief of Appellant, at 7. Janczak further asserts that the Act is not preempted by the Federal Charter of the Federal National Mortgage Association ("FNMA Charter") because the Act "in no way conflicts with federal law concerning [Fannie Mae's] Federal Charter or its legal corporate name[,] which is the Federal National Mortgage Association." *Id.* at 9. Specifically, based on the italicized language above, Janczak contends that the FNMA grants authority for the corporate body commonly known as Fannie Mae to sue only "in its corporate name." As the entity's corporate name is the Federal National Mortgage Association, Janczak claims Fannie Mae lacked standing to sue in its colloquial name.

Fannie Mae argues, and the trial court found, that the bolded portion of section 1923a, quoted above, authorizing the corporation to "conduct its business without regard to any qualification or similar statute in any State," preempts the requirements of the Act. Accordingly, Fannie Mae argues it was

not required to register "Fannie Mae" as a fictitious name as a prerequisite to maintaining an action in that name. In addition, Fannie Mae alleges that its bylaws state that, while "[t]he name of the corporation is Federal National Mortgage Association[, t]he corporation may also do business under the name Fannie Mae." Fannie Mae Bylaws, Art. 1, Sec. 1.01, as amended through Jan. 29, 2019. Accordingly, Fannie Mae argues it properly sued under its fictitious name.

The Supremacy Clause of the United States Constitution, prohibits states from enacting laws contrary to the federal government's laws. *Moscatiello v. Hilliard*, 939 A.2d 325, 328 (Pa. 2007). Specifically, it provides that the laws of the United States "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Congressional intent to preempt state law may be express or implied and found in any of three ways:

> First, state law may be preempted where the United States Congress enacts a provision which expressly preempts the state enactment. Likewise, preemption may be found where Congress has legislated in a field so comprehensively that it has implicitly expressed an intention to occupy the given field to the exclusion of state law. Finally, a state enactment will be preempted where a state law conflicts with a federal law. Such a conflict may be found in two instances, when it is impossible to comply with both federal and state law or where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

***Kiak v. Crown Equip. Corp.***, 989 A.2d 385, 391 (Pa. Super. 2010) (brackets and quotation marks omitted).

Here, we need not reach the issue of preemption, as we agree with Janczak that, under the plain language of the FNMA Charter, Fannie Mae is only empowered to "sue and be sued, and to complain and to defend" in its corporate name. ***See*** 12 U.S.C. § 1723a(a). While the charter authorizes the corporation to "conduct its business" without regard to any state qualification, ***see id.***, the language of the statute is plain and unambiguous with regard to the name in which it is empowered to commence suit in a court of law—its corporate name. Although the corporation regularly conducts business under the name "Fannie Mae," the name of the corporate entity is plainly and unambiguously stated as "Federal National Mortgage Association" throughout the empowering legislation. ***See*** 12 U.S.C. § 1716b (creating corporation "to be known as Federal National Mortgage Association"). Indeed, nowhere in that legislation is the entity referred to as "Fannie Mae." ***See*** 12 U.S.C. §§ 1716-1723i.

Moreover, we are unpersuaded by Fannie Mae's reference to its bylaws. Again, while it is apparent that the corporation has chosen to "do business" as "Fannie Mae," there is no evidence that it has ever legally changed its corporate name to "Fannie Mae." Accordingly, the fact that the bylaws authorize the corporation to "do business" as "Fannie Mae" is of no moment here.

Because the plain language of the FNMA empowers the corporation commonly known as Fannie Mae to sue only "in its corporate name," which is the "Federal National Mortgage Association," **see** 12 U.S.C. 1723a(a), we are constrained to conclude that the trial court erred in granting summary judgment in favor of "Fannie Mae."

Order reversed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/21/21