J-A10018-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DE LAGE LANDEN FINANCIAL SERVICES, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ONPOINT ENERGY SERVICES, LLC, | : | |
| JEFFREY WATTS, BRENT COOK, AND | : | No. 1588 EDA 2020 |
| RONALD HAMMOND | : | |
| | : | |
| Appellants | : | |

Appeal from the Order Entered July 17, 2020
In the Court of Common Pleas of Chester County Civil Division at No(s):
No. 2019-11123-JD

BEFORE:   PANELLA, P.J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:                    **FILED SEPTEMBER 16, 2021**

Appellants, Onpoint Energy Services, LLC ("Onpoint"), Jeffrey Watts ("Watts"), Brent Cook ("Cook"), and Ronald Hammond ("Hammond"), (collectively "Appellants") appeal from the July 17, 2020 order granting summary judgment[1] in favor of De Lage Landen Financial Services, Inc. ("De Lage"), in the amount of $2,826,903.08, plus statutory interest from the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] An order granting summary judgment that disposes of all claims and all parties is a final and appealable order. **Mae v. Janczak**, 245 A.3d 1134, 1135 n.1 (Pa. Super. 2021); **see also** Pa.R.A.P. 341(b)(1) (defining a final order as an order that, *inter alia*, "disposes of all claims and of all parties").  Here, because the July 17, 2020 order granting summary judgment disposed of all claims and all parties, this appeal properly lies from said order.  **Mae**, 245 A.3d at 1135 n.1.

date of said order.[2] We vacate the July 30, 2020 entry of judgment, and we affirm, in part, and vacate, in part, the July 17, 2020 order in accordance with this memorandum and remand this case for further proceedings.

The record demonstrates that, on July 29, 2015, Appellants entered into a Loan and Security Agreement ("Loan Agreement") with De Lage to secure funds in the amount of $2,400,000.00 for the purchase of two all-terrain cranes.[3] De Lage's Complaint in Confession of Judgment ("De Lage's Complaint"), 11/5/19, at Exhibit A. On December 30, 2015, Appellants entered into an Equipment Lease Agreement ("Lease Agreement") with De Lage for the lease of an all-terrain crane.[4] *Id.* at Exhibit D. On January 23, 2018, Appellants and De Lage entered into a Payment Restructure Agreement ("Restructure Agreement") wherein Appellants acknowledged that they were past due on their January 15, 2018 loan payment. *Id.* at Exhibit G. Pursuant to the Restructure Agreement, the loan repayment schedule was

---

[2] Upon *praecipe* to enter judgment, judgment in the amount of $2,826,903.08 was entered in favor of De Lage on July 30, 2020.

[3] Onpoint entered into the Loan Agreement as the borrower, and Watts, Cook, and Hammond executed personal guarantees. De Lage's Complaint, 11/5/19, at Exhibits A and B. The Loan Agreement called for repayment of the loan amount in 72 equal monthly installments of $37,319.24 with loan repayment to commence on August 15, 2015. *Id.* at Exhibit A.

[4] Onpoint entered into the Lease Agreement as the lessee, and Watts, Cook, and Hammond executed personal guarantees. De Lage's Complaint, 11/5/19, at Exhibits D and E. The Lease Agreement called for monthly payments in the amount of $14,933.73 over a period of 24 months with lease payments to commence on January 1, 2016. *Id.* at Exhibit D.

modified, and the term of the loan was extended from 72 months to 76 months.[5] *Id.*

On November 5, 2019, De Lage filed a complaint in confession of judgment alleging that Appellants defaulted on the Loan Agreement, as modified by the Restructure Agreement, and the Lease Agreement. De Lage's Complaint, 11/5/19, at ¶¶14, 19. Upon *praecipe* to enter a confessed judgment, a judgment was entered against Appellants on November 5, 2019.[6] On December 5, 2019, Appellants filed a petition to open the confessed judgment on grounds that the judgment was defective and was contradicted by the documents attached to De Lage's complaint. Appellants' Petition to Open Judgment by Confession, 12/5/19, at ¶¶18-19, 35. In sum, Appellants challenged the accuracy of the judgment amount. De Lage filed a response

---

[5] The Restructure Agreement called for an "interest only" loan payment, in the amount of $6,117.15 per month, commencing with the then-past due January 15, 2018 loan payment and continuing for the three consecutive loan payments thereafter. De Lage's Complaint, 11/5/19, at Exhibit G. A monthly loan payment (comprised of principal plus interest) in the amount of $38,058.94 per month was to commence on May 15, 2018, and to continue through the loan's end-of-life with the last payment due on December 15, 2021. *Id.* The Restructure Agreement stated that although the Restructure Agreement encompassed the Lease Agreement, no changes were being made to the Lease Agreement. *Id.* Watts, Cook, and Hammond executed a guarantor consent to the Restructure Agreement, although the guarantor consent agreement attached to De Lage's Complaint, while signed by the personal guarantors, was not witnessed. *Id.* at Exhibit H.

[6] A confessed judgment in the amount of $1,077,668.39 was entered against Appellants for the Loan Agreement and a confessed judgment in the amount of $1,512,074.51 was entered against Appellants for the Lease Agreement. The total confessed judgment was $2,589,742.90.

to Appellants' petition on December 26, 2019.  On February 20, 2020, the trial court granted Appellants' petition and opened the confessed judgment.  Trial Court Order, 2/20/20.

On May 21, 2020, De Lage filed a motion for summary judgment arguing that it was due $1,177,850.42 under the terms of the Loan Agreement and due $1,649,052.66 under the terms of the Lease Agreement for a total of $2,826,903.08.  De Lage's Motion for Summary Judgment, 5/21/20, at ¶¶18, 27.  Appellants filed a response to De Lage's motion for summary judgment on June 22, 2020.  On July 17, 2020, the trial court granted De Lage's motion for summary judgment and awarded judgment in favor of De Lage in the amount of $2,826,903.08, plus statutory interest from the date of said order.  Trial Court Order, 7/17/20.  Judgment in the amount of $2,826,903.08 was entered in favor of De Lage on July 30, 2020.  On August 17, 2020, Appellants filed an emergency motion for reconsideration of the July 17, 2020 order granting summary judgment, which the trial court subsequently denied that same day.  Appellants' Emergency Motion for Reconsideration, 8/17/20; **see also** Trial Court Order, 8/17/20.  This appeal followed.[7]

Appellants raise the following issues for our review:

1.    [Did the trial] court err[] in assessing damages in the amount of $2,826,903.08 without an assessment of damages hearing or otherwise requiring [De Lage] to show there was no genuine issue of material fact as to the amount of damages where: (i) [De Lage] failed to carry its burden

---

[7] Both Appellants and the trial court complied with Pa.R.A.P. 1925.

> of proving that there was no genuine issue of material fact as to the amount of the damages, (ii) the damages are not a sum certain, and (iii) the damages calculation offered by [De Lage] is conclusory, incomplete, inaccurate, and inconsistent with the contract documents[?]
>
> 2.    [Did the trial] court err[] in failing to grant [Appellants'] motion for reconsideration and schedule an assessment of damages hearing[?]

Appellants' Brief at 5-6 (footnote and extraneous capitalization omitted).

Appellants' first issue challenges the trial court's order granting summary judgment, for which our standard and scope of review are well-settled.

> A reviewing court may disturb the order of the trial court only where it is established that the [trial] court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.
>
> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. [*See*] Pa.R.C[iv].P. 1035.2. [Rule 1035.2] states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Murphy v. Duquesne Univ. of The Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001) (case citations, ellipses, and quotation marks omitted).

- 5 -

The function of the summary judgment proceedings is to avoid a useless trial but is not, and cannot, be used to provide for trial by affidavits or trial by depositions. That trial by testimonial affidavit is prohibited cannot be emphasized too strongly. In considering a motion for summary judgment, the [trial] court must examine the whole record, including the pleadings, any depositions, any answers to interrogatories, admissions of record, if any, and any affidavits filed by the parties. From this thorough examination[,] the [trial] court will determine the question of whether there is a genuine issue as to any material fact. On this critical question, the party who brought the motion has the burden of proving that no genuine issue of fact exists. All doubts as to the existence of a genuine issue of a material fact are to be resolved against the granting of summary judgment.

**DeArmitt v. New York Life Ins. Co.**, 73 A.3d 578, 595 (Pa. Super. 2013).

The **Nanty–Glo** rule[8] means the party moving for summary judgment may not rely solely upon its own testimonial affidavits or depositions, or those of its witnesses, to establish the non-existence of genuine issues of material fact. Testimonial affidavits of the moving party or [its] witnesses, [while] not documentary, even if uncontradicted, will not afford sufficient basis for the entry of summary judgment, since the credibility of the testimony is still a matter for the factfinder.

**Id.** (quotation marks and original brackets omitted).

Here, Appellants do not dispute that they were in default of the Loan Agreement, as modified by the Restructure Agreement, and the Lease Agreement for failure to make timely payments. Appellants' Brief at 9, 25 (stating, De Lage "admittedly established that there was a default under the documents, *i.e.* the absence of [a] genuine issue of material fact on liability[,] but did not establish the absence of a genuine issue as to damages" (emphasis

---

[8] **Borough of Nanty-Glo v. Am. Sur. Co. of New York**, 163 A. 523 (Pa. 1932).

omitted)); *see also* Appellants' Answer to De Lage's Motion for Summary Judgment, 6/22/20, at ¶¶13, 22. Appellants, however, dispute the damages calculations and the amounts of the judgments entered against them for their default of the Loan Agreement and for their default of the Lease Agreement. Appellants' Brief at 9, 25; *see also* Appellants' Answer to De Lage's Motion for Summary Judgment, 6/22/20, at ¶¶18, 28 Concerning the Loan Agreement, Appellants contend that the present value of the "remaining payments discounted at 3%"[9] should be $860,980.83, not $923,537.46, as alleged in De Lage's motion for summary judgment.[10] Appellants' Brief at 26-27; *see also* Appellants' Answer to De Lage's Motion for Summary Judgment, 6/22/20, at ¶18; De Lage's Motion for Summary Judgment,

---

[9] The Loan Agreement, as well as the Lease Agreement, provides that the present value of future cash flows (*i.e.,* outstanding payments) awarded as damages upon default shall be calculated using a discount rate of 3 *per centum*. De Lage's Complaint, 11/5/19, at Exhibit A ¶16; *see also id.* at Exhibit D ¶15.

[10] Appellants assert that a payment of $38,058.94 was due on December 15, 2019, and that aggregate payments in the amount of $432,707.28, *per annum*, were due in both 2020, and 2021, for a total amount due of $903,473.50. Appellants' Brief at 26. In so arguing, Appellants admit that they defaulted on 25 payments. *Id.* In calculating the aggregate amount *per annum*, due in both 2020, and 2021, Appellants contend that twelve payments of $35,058.94 each were due in 2020 and again in 2021 for an aggregate amount, *per annum*, of $432,707.28. *Id.* This calculation, however, is in error, as $432,707.28 divided into 12 equal payments is $36,058.94 per payment. Moreover, in using Appellants' total amount due of $903,473.50, the present value of $903,473.50, discounted at 3%, would be $877,055.50, not $860,980.83, as Appellants assert. Appellants' Brief at 27 (stating, "[t]he total undiscounted future stream should[,] in fact[,] be $903,473.40, which the discounted total should be $860,980.83).

5/21/20, at ¶18. Regarding the Lease Agreement, Appellants do not assert a specific amount due for the "remaining payments discounted at 3%" but contend that De Lage's claimed amount of $1,418,962.00 is implausible because the aggregate lease payment due under the life of the Lease Agreement was only $358,409.52.[11] Appellants' Brief at 29. Appellants surmise that the calculated amount of $1,418,962.00 may be based upon De Lage's "estimated fair market value of the [e]quipment" at end of the Lease Agreement. *Id.* at 31. Appellants assert that if, in fact, this "remaining payments discounted at 3%" amount is based upon an estimated fair market value of the equipment, the fair market value of the equipment at the end of the Lease Agreement term presents a genuine issue of material fact.[12] *Id.* at 31-32.

De Lage asserts that regarding the Loan Agreement damages calculation, Appellants "fail to acknowledge that the payment terms set forth in the [Loan] Agreement were superseded by the [Restructure Agreement]." De Lage's Brief at 14. De Lage contends that at the time of Appellants' default, 25 payments of $38,058.94 per payment were unpaid for a total amount due of $951,473.50, which, when discounted at a rate of 3%, equals

---

[11] Pursuant to the Lease Agreement, 24 monthly lease payments of $14,933.73 per payment equals an aggregate lease payment of $358,409.52.

[12] The fair market value of an item, such as equipment, is "the price a purchaser, who is willing but not obligated to buy, would pay an owner, who is willing but not obligated to sell." **Bryn Mawr Trust Co. v. Healy**, 667 A.2d 719, 723 (Pa. Super. 1995), *appeal denied*, 681 A.2d 1340 (Pa. 1996).

a present value of $923,537.46, as represented in its summary judgment motion. *Id.* at 15; *see also* De Lage's Motion for Summary Judgment, 5/21/20, at ¶18. Concerning the Lease Agreement, De Lage acknowledges that the Lease Agreement expired in December 2017, but that Appellants retained the equipment, which, pursuant to the Lease Agreement, Appellants were obligated to return or purchase upon expiration of the Lease Agreement. De Lage's Brief at 17. De Lage asserts that the $1,418,962.00 amount identified as "remaining payments discounted at 3%" is based upon the "renewal payments," as discussed *infra*, that Appellants were obligated to pay because they retained possession of the leased equipment upon termination of the Lease Agreement, as well as the fair market value of the leased equipment, which Appellants retained. *Id.*

In granting De Lage's motion for summary judgment, the trial court stated,

> In both their petition to open [the confessed judgment] and their response to [De Lage's] motion for summary judgment, [Appellants] argue that: (1) the documents attached to the complaint actually contradict the amount [De Lage] claims as due and payable; and (2) due to the [COVID-19 global] pandemic, the failure of [Appellants] to respond to [De Lage's] request for admissions should not be deemed as admissions to [De Lage's] requests. (It is interesting to note that [Appellants] never requested an assessment of damages hearing.) Upon review of [De Lage's] motion for summary judgment and its sur-reply, we determined that the documents do not, in fact, contradict the damages requested.

Trial Court Opinion, 9/30/20, at 2 (extraneous capitalization omitted).

Viewing the evidence concerning the Loan Agreement in the light most favorable to Appellants, as the non-moving parties, the record supports the trial court's conclusion that no genuine issue of material fact existed that the "remaining payments discounted at 3%" amount due under the terms of the Loan Agreement, as modified by the Restructure Agreement, was $923,537.46. The Restructure Agreement modified the original terms of the Loan Agreement and specified that the final 44 monthly installment payments were $38,058.94 per payment. *See* De Lage's Complaint, 11/5/19, at Exhibit G. Neither party disputes that Appellants were in default of the Loan Agreement, as modified by the Restructure Agreement, or that Appellants failed to make the final 25 monthly payments called for under the Loan Agreement. Contrary to Appellants' mathematical calculation,[13] 25 payments of $38,058.94 per payment equals $951,473.50. *See* Appellants' Brief at 27 (stating, "[t]he total undiscounted future stream should[,] in fact[,] be $903,473.50"). By exercising simple mathematical principles, we find no error in the trial court's determination that the aggregate "remaining payments discounted at 3%" was $923,537.46. Consequently, we affirm, in part, the

_____

[13] Appellants contend that the aggregate of the remaining payments due without discounting was $903,473.50. Appellants' calculation is based upon the mis-understanding that one outstanding payment was in the amount of $38,058.94 and the other 24 outstanding payments were $36,058.94 per payment. This calculation is contrary to the payment schedule set forth in the Restructure Agreement and agreed to by the parties.

July 17, 2020 order granting summary judgment as it pertains to the $1,177,850.42 judgment entered in favor of De Lage.

Concerning the Lease Agreement, viewing the evidence in the light most favorable to Appellants, as the non-moving parties, we find that the trial court erred in its conclusion that no genuine issue of material fact existed as to the "remaining payments discounted at 3%" in the amount of $1,418,962.00 due under the terms of the Lease Agreement. A review of the Lease Agreement demonstrates that, within 60 days, but not more than 120 days, of the expiration of the Lease Agreement, Appellants were required to provide De Lage written notice of whether Appellants intended to return the leased equipment or purchase the leased equipment. De Lage's Complaint, 11/5/19, at Exhibit D. The Lease Agreement further stated,

> Provided [Appellants] have given proper notice of [their] election to purchase the equipment and Appellants are not in default, [Appellants] shall have the option to purchase all but not less than all of the equipment on the terms as indicated in the End of Lease Options checked [herein]. [(In this instance, the end of lease option selected was to purchase the equipment at fair market value.)] [De Lage] will use [its] reasonable judgment to determine the equipment's fair market value for all [fair-market-value] purchase options that shall be based upon the equipment remaining in place, on an "as is" "where is" basis without representation of warranty of any kind whether expressed or implied. **If [Appellants] fail to notify [De Lage] of [their] intention to return or purchase the equipment**, or having notified [De Lage, Appellants] fail to return or purchase the equipment as provided herein, **this Lease [Agreement] shall renew for consecutive [60-day] periods and [Appellants] agree to continue to make lease payments at the same monthly lease payments [amount] as set forth in the Lease [Agreement** (in this instance, the monthly payment was $14,933.73)] subject to [Appellants'] right to terminate the Lease

- 11 -

[Agreement] upon [60-days] written notice, in which case [Appellants] will immediately deliver the equipment to [De Lage.]

*Id.* at ¶9 (extraneous capitalization and original emphasis omitted, emphasis added). Pursuant to the Lease Agreement, if Appellants defaulted under the terms of the Lease Agreement (with the term "default" including, *inter alia*, a failure to make payment or a breach of any obligation under the Lease Agreement), then, as remedies, De Lage could "sue for and receive all lease payments and any other payments then accrued or accelerated under this Lease [Agreement] or any other agreement **plus the estimated fair market value of the equipment at the end of the originally executed Lease [Agreement] term**, [with] all accelerated lease payments and the estimated fair market value" discounted to present value." *Id.* at ¶15 (extraneous capitalization omitted, emphasis added).

In the case *sub judice*, Appellants do not contest the assertion that they were in default of the Lease Agreement.[14] Appellants' Brief at 9. Pursuant to the terms of the Lease Agreement, De Lage was entitled to collect the balance

---

[14] It is undisputed that Appellants failed to provide De Lage with proper notice of their intent either to return the leased equipment or purchase the leased equipment. Thus, pursuant to the terms of the Lease Agreement, the Lease Agreement automatically renewed for consecutive 60-day periods until terminated. During the renewal period of the Lease Agreement, Appellants were required to pay a lease payment of $14,933.73 per month. As such, Appellants were obligated to pay $343,475.79 in lease payments covering the automatic renewal period of January 2018, through November 2019. If this amount of $343,475.79 remained outstanding in full as of November 2019, then the present value of that amount discounted at 3% would be $334,216.20.

of the unpaid lease payments and the estimated fair market value of the leased equipment as determined at the time the Lease Agreement originally terminated in January 2018. De Lage, as the party seeking summary judgment, had the burden of proving that no genuine issue existed as to the material fact that the "remaining payments discounted at 3%" pursuant to the terms of the Lease Agreement were $1,418,962.00 as it claimed.[15] De Lage asserts that the $1,418,962.00 amount represents the "booked residual value of the leased equipment which was determined at [the] Lease [Agreement] inception."[16] De Lage's Response to [Appellants'] Petition to Open Judgment by Confession, 12/26/19, at ¶¶6, 8 (extraneous capitalization omitted). A review of the Lease Agreement, however, does not set forth a fair market value, or "booked residual value," of the leased equipment at the time the

_____

[15] Appellants contend that a genuine issue of material fact exists surrounding the $1,418,962.00 figure designated in the order granting summary judgment as "remaining payments discounted at 3%." Appellants' Brief at 29. In so arguing, Appellants do not challenge the other figures, such as "past due/billed payments," "late charges," "finance charges," or insufficient funds fees, which comprise a part of the $1,649,052.66 judgment. The interest accrued amount is implicitly challenged as it was based, *inter alia*, on the $1,418,962.00 "remaining payments discounted at 3%" amount, which is disputed.

[16] At oral argument, De Lage asserted that the fair market value of the equipment at the end of lease life was determined at the inception of the Lease Agreement because De Lage needed to assess, prior to entering into the Lease Agreement, if the Lease Agreement were a viable business transaction. The record does not contain any support for this assertion.

Lease Agreement expired in January 2018.[17] De Lage's Complaint, 11/5/19, at Exhibit D. Moreover, the record demonstrates that De Lage did not offer evidence pertaining to the fair market value of the leased equipment at the expiration of the Lease Agreement.[18]

Upon review of the record, we discern that the trial court erred in concluding that a genuine issue of material fact did not exist as to the "remaining payments discounted at 3%" amount due and, in particular, what portion, if any, of the $1,418,962.00 amount represented unpaid renewal lease payments and what portion, if any, represented the fair market value of

---

[17] Attached to De Lage's motion for summary judgment, and in support thereof, was an affidavit from a De Lage litigation and recovery specialist which states that the "$1,418,962.00 figure **represents the remaining payments due and owing** [pursuant to paragraph 15 of the Lease Agreement] discounted at a rate of 3%[.]" De Lage's Motion for Summary Judgment, 5/21/20, at Exhibit D (emphasis added). De Lage, as the party seeking summary judgment, may not rely solely upon this affidavit to establish the non-existence of a genuine issue of material fact. **DeArmitt**, 73 A.3d at 595. Moreover, as discussed *supra*, paragraph 15 of the Lease Agreement permits De Lage to recover outstanding lease payments, as well as the fair market value of the equipment.

[18] Fair market "value or damages may be established by the owner of the property, by expert witnesses, or by persons with knowledge and experience qualifying them to form a reasonably intelligent judgment as to value." **Walnut St. Fed. Sav. and Loan Ass'n v. Bernstein**, 147 A.2d 359, 361 (Pa. 1959). In the case *sub judice* De Lage did not offer valuation evidence by an expert witness, a qualified person with knowledge and experience, or an owner of the property. Although Appellants attached an affidavit from their litigation and recovery specialist, this individual did not, in fact, state the fair market value of the leased equipment as of January 2018 but, rather, expressed that the $1,418,962.00 figure represented "the remaining payments due and owing[.]"

the leased equipment as of January 2018. Therefore, we vacate, in part, the July 17, 2020 order granting summary judgment as it pertains to the $1,649,052.66 judgment entered in favor of De Lage.[19]

Judgment vacated. Order affirmed, in part, and vacated, in part. Case remanded. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 9/16/2021*

---

[19] Considering this disposition, we do not address Appellant's second issue.